UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELANA HURT, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:07-CV-1209-WTL-JMS |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Elana Hurt ("Hurt"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), denying Hurt's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court rules as follows.

**I. BACKGROUND**

**A. PROCEDURAL HISTORY**

Hurt was forty-five years old at the time of the decision rendered by the Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA"). R. at 13. She has an Associates Degree in office management and worked for ten weeks as a scale house clerk in the late summer of 2003 and 2005. *Id.* Hurt has alleged an onset date of disability of October 12, 2002. *Id.* The ALJ presumed that Hurt had not performed any substantial gainful activity since October 12, 2002. *Id.*

Hurt applied for SSI on January 8, 2003, and DIB on January 15, 2003, alleging that she became disabled due to degenerative disc disease, stomach, shoulder, arthritis, and neck problems.

*Id.* at 12-13, 326-330. Her application was denied initially and upon reconsideration. *Id.* at 12. On June 24, 2004, Hurt appeared with counsel for an administrative hearing before an ALJ. *Id.* Thereafter, on November 19, 2004, the ALJ rendered his decision in which he concluded that Hurt was not entitled to a period of disability or to DIB and was not eligible for SSI under the Social Security Act ("the Act"). *Id.*

After the ALJ's decision, Hurt filed a Request for Review of Hearing Decision-Order. *Id.* at 12, 154-169. On March 22, 2005, the Appeals Council granted review of the ALJ's decision under the substantial evidence provision of the SSA Regulations, vacated the hearing decision, and remanded the case to an ALJ for further proceedings. *Id.* at 12. The Appeals Council found that Hurt's set of interrogatories were never sent to the vocational expert, the hearing decision did not adequately evaluate treating source opinions of Dr. Gregory L. Spangler ("Dr. Spangler") and Dr. Craig Mines ("Dr. Mines"), and the hearing decision did not adequately evaluate the claimant's subjective complaints of pain. *Id.*

Hurt appeared with counsel at a supplemental hearing on August 30, 2005. *Id.* Also present were Dr. Richard A. Hutson ("Dr. Hutson"), an impartial medical expert board certified in orthopedic surgery who has practiced orthopedic surgeon for the last 35 years, and Michael Blankenship, a vocational witness and certified rehabilitation counselor. *Id.* at 12-13. The ALJ issued a recommended decision on November 7, 2005, that Hurt was not entitled to a period of disability or to DIB and was not eligible for SSI under the Act.. *Id.* at 27. Hurt's request for review was denied by the Appeals Council, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review. *Id.* at 6.

## B.  MEDICAL HISTORY

Hurt has had a history of musculoskeletal pain.  She began treatment as early as December 1, 1998, with Dr. Spangler, her family physician.  *Id.* at 15, 437.  In 2000, Dr. Spangler prescribed Prevacid for gastroesophageal reflux disorder ("GERD") and diagnosed her with possible fibromyalgia.  She was referred to a rheumatologist, who diagnosed her with myofascial pain syndrome, scoliosis, temporal mandibular joint syndrome, and depression.  *Id.* at 15, 437, 481.  Dr. Spangler obtained an MRI scan in 2001 which revealed disc protrusion but demonstrated no evidence of neural compression.  *Id.* at 16, 426.  In 2001, another MRI scan of Hurt's hips was found unremarkable.  *Id.* at 16, 424.  X-rays revealed a dextroscoliosis and a grade I spondylolisthesis at L5-S1 with narrowing of the L5-S1 disc space.  *Id.* at 16, 391.  In April 2002, Hurt went to the emergency room due to a fall from a ladder.  *Id.* at 16, 333-335.  X-rays revealed scoliosis but no indication of any grade I spondylolisthesis or of disc space narrowing.  *Id.* at 16, 335, 438.

Hurt was examined by Dr. Anton Kojouharov ("Dr. Kojouharov") on March 7, 2003.  *Id.* at 14, 16, 326-330.  Dr. Kojouharov's impression included cervical spine pain, lumbosacral spine pain, degenerative disc disease, anxiety disorder, GERD, and nicotine addiction.  *Id.* at 14, 329.  On March 31, 2003, Hurt received a Physical Residual Functional Capacity Assessment ("RFC") from Dr. Fife, board certified in internal medicine with a primary specialty in rheumatology, and Dr. Sands, board certified in internal medicine and psychiatry and neurology.  *Id.* at 16.  The RFC included limitations of maximum lifting twenty pounds, frequently lifting ten pounds, standing and walking for a total of six hours per workday, and sitting for a total of six hours per workday.  *Id.* at 16, 318-325, 439.

Hurt was also examined by a clinical psychologist on April 21, 2003. *Id.* at 14, 16, 19, 314-317. Hurt indicated she had been an alcoholic until January 2003 and had made several attempts at suicide. *Id.* at 14, 16-17, 19, 315. The psychologist assessed Hurt at a 65 on the Global Assessment of Functioning scale, which is indicative of some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and having some meaningful interpersonal relationships. *Id.* at 15, 17, 19, 316, 449.

An MRI scan of Hurt's lumbar spine on May 3, 2004, revealed mild disc bulges at L4-L5 and L5-S1. *Id.* at 17, 439, 482, 508. An EMG of Hurt's right lower extremity on May 11, 2004 revealed chronic L5 radiculopathy. *Id.* at 17, 439, 483, 507. Hurt was advised that her pain resulted from a right hip abnormality and she was referred to Dr. Mines, an orthopedic surgeon. *Id.* at 17, 439, 506.

In June 2004, Dr. Mines determined Hurt's X-rays revealed sclerosis with mild spurring but no change in joint space, and her MRI scan showed no evidence of significant problems and only minimal arthrosis of the hips and joints. *Id.* at 17, 484, 487. Dr. Mines recommended physical therapy to decrease her pain and inflammation. *Id.* at 18, 440, 484. Dr. Arthur Lorber ("Dr. Lorber"), board certified in orthopaedic surgery, reviewed the medical evidence of record and concluded that the X-rays and MRI scan revealed only minimal degenerative changes in Hurt's right hip and minimal limitation of motion in her right hip. *Id.* at 18, 440. Dr. Lorber stated that Hurt could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for a total of at least two hours in an eight hour workday, and sit with normal breaks for a total of about six hours in an eight hour workday. *Id.* at 18, 442. He also stated that her ability to push or pull with her lower extremities was limited. *Id.*

Dr. Joseph Pressner and Dr. William Shipley, both licensed clinical psychologists, indicated that Hurt did not have a severe emotional, mental, psychiatric, or psychological impairment as contemplated by the Act. *Id.* 18, 300-313. In September 2004, the vocational witness indicated that Hurt could perform her past relevant work as a sedentary, semi-skilled (SVP-4) office clerk. *Id.* at 20, 255-256.

At the supplemental hearing, Dr. Hutson testified that while Hurt had a vertebrogenic disorder involving degenerative disc disease of the cervical and lumbar spine and some evidence of greater trochanteric bursitis, her combined impairments did not meet or equal in severity a listed impairment under the Act. *Id.* at 22. He determined that any loss of range in motion is mild. *Id.* at 22. Dr. Hutson agreed with the work restrictions suggested by Dr. Lorber. The vocational expert at the supplemental hearing testified that Hurt could perform sedentary, semi-skilled work (SVP-3 and SVP-4).

## II. DISABILITY AND THE STANDARD OF REVIEW

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, an ALJ applies the five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

---

[1]Hurt has applied for both DIB and SSI. Due to the fact that the definition of "disability" and the applicable five-step process are identical under both standards, reference will only be made to the standards for DIB.

5

  1.  Is the claimant engaging in substantial gainful activity? If so, she is not disabled.

  2.  If not, does the claimant have an impairment or combination of impairments that are severe? If not, she is not disabled.

  3.  If so, does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant is disabled.

  4.  If not, can the claimant do her past relevant work? If so, she is not disabled.

  5.  If not, can the claimant perform other work given her RFC, age, education, and experience? If so, then she is not disabled. If not, she is disabled.

The burden of proof is on the claimant for the first four steps and then shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

  The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See, e.g.*, *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *See id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.

1994).  Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307.  In other words, the ALJ must clearly articulate his analysis of the evidence, building an accurate and logical bridge from the evidence to his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

### III. **DISCUSSION**

The ALJ in this case found Hurt not disabled at steps four and five of the sequential evaluation process.  R. at 26.  At step one, the ALJ found that Hurt was not engaged in substantial employment.  *Id.* at 25.  At steps two and three, the ALJ concluded that Hurt had chronic low back pain with lumbar spinal scoliosis of a mild degree and multilevel degenerative spondylosis, chronic complaints of neck pain with mild degenerative spondylosis, chronic right hip pain, and complaints of right shoulder pain but that those impairments did not meet or medically equal a listed impairment.  *Id.*  At step four, the ALJ concluded that Hurt had the RFC to perform her past relevant work as a sedentary semi-skilled payroll clerk as she actually performed this job and as it is customarily performed throughout the national economy.  *Id.* at 26.  Finally, at step five, the ALJ found that given Hurt's RFC, age, education, and experience, she was capable of performing a significant number of jobs in the national economy.  *Id.*  Based on the foregoing analysis, the ALJ determined that Hurt was not disabled.  *Id.*

Hurt argues that the ALJ erred in rejecting the treating physicians' opinions and in not properly crediting the plaintiff's subjective complaints of pain. The Court considers each argument in turn.

### A. THE ALJ'S REJECTION OF THE TREATING PHYSICIANS' OPINIONS

Hurt first contends that the ALJ erred in rejecting the opinions of the two treating physicians, Dr. Spangler and Dr. Mines. More specifically, Hurt takes issue with the ALJ's rejection of those opinions without weighing the factors provided in 20 C.F.R. § 404.1527(d), which states that the following factors will be considered in determining the weight to be given to any medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors which tend to support or contradict the opinion. Hurt also argues that the ALJ's bare statements regarding his reasons for rejecting the treating physicians' opinions fail to meet the requirement that the ALJ build an accurate and logical bridge from the evidence to his conclusion. Although the ALJ did not expressly go through each factor, he properly rejected Dr. Spangler's and Dr. Mine's opinions and adequately built an accurate and logical bridge from the evidence to his conclusion.

"When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir 2001). In this case, the ALJ acknowledged that Hurt began treatment with Dr. Spangler on December 1, 1998, indicating the two had both an examining and treating relationship. R. at 15. Dr. Spangler's disability opinions, however, were not supported by medically acceptable clinical and laboratory diagnostic techniques or Hurt's medical record. On the RFC

questionnaire, Dr. Spangler left the answer blank when asked to identify the clinical findings, laboratory and test results which demonstrated Hurt's medical impairments. *Id.* at 474. Additionally, numerous MRI scans were performed with unremarkable findings. *Id.* at 16, 17, 21, 424, 438, 440, 482, 488, 508, 596.

Dr. Spangler's disability opinions were also inconsistent with the opinions of Dr. Hutson and Dr. Lorber. Dr. Spangler found that Hurt could never lift/carry twenty pounds and rarely lift/carry ten pounds and could sit about four hours during an eight hour workday, but Dr. Hutson and Dr. Lorber found that Hurt could lift/carry twenty pounds occasionally and ten pounds frequently and could sit about six hours during an eight hour workday. *Id.* at 22, 441-448, 476-477. Dr. Lorber's diagnosis stated that Hurt did not meet or medically equal a listed impairment based on the fact that the x-rays/MRI revealed only minimal degenerative changes and only minimal limitation of motion. R. at 18, 440. Moreover, Dr. Hutson stated that Dr. Spangler relied totally on Hurt's subjective complaints and failed to state any documented impairment or objective medical findings to substantiate those complaints. Finally, the ALJ specifically listed additional reasons for rejecting Dr. Spangler's proposed work restrictions: Hurt's back injury was not documented by the record medical evidence, her neck and back pain were symptoms rather than impairments, hypothroid is a condition amenable to treatment, and her alcohol abuse stopped well before this case. *Id.* at 22.

Similarly, the ALJ rejected Dr. Mines's disability opinions because they were not supported by medically acceptable clinical and laboratory diagnostic techniques or Hurt's medical record and were not consistent with the opinions of the other doctors. Dr. Mines's work restrictions were based on a diagnosis of "unspecified arthropathy, pelvic region and thigh." *Id.* at 23, 489. The ALJ pointed out that the restrictions based solely on this diagnosis contradicted Hurt's "MRI of her hips

which Dr. Mines, Dr. Taylor, Dr. Liu, Dr. Hutson, and Dr. Lorber all acknowledge was normal." *Id.* at 23. Dr. Hutson suspected trochanteric bursitis. *Id.* at 23, 489. The ALJ did acknowledge that it was possible that trochanteric bursitis might not show up on an MRI, but Dr. Hutson stated that it was a common condition that could be treated and does not result in disabling functional restrictions. *Id.* at 23.

As illustrated above ,the ALJ gave more than just bare statements for rejecting the treating physicians' opinions. The Court concludes that there is sufficient evidence to support the ALJ's decision to give less weight to the opinions of Dr. Spangler and Dr. Mines. His analysis of the evidence allowed the Court to trace the path of his reasoning, thus building an accurate and logical bridge from the evidence to the conclusion.

### B. ALJ'S TREATMENT OF THE PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN

Hurt next argues that the ALJ erred in not properly crediting the her subjective complaints of pain. In evaluating symptoms, including pain, the ALJ must look to the medical evidence as well as other evidence from Hurt herself, her doctors, or any other evidence illustrating how her impairment affects her ability to work. 20 C.F.R. § 404.1529(a). The ALJ must consider relevant factors such as (1) Hurt's daily activities; (2) location, duration, frequency, and intensity of her pain or other symptoms; (3) precipitating and aggravating factors; (4) type of dosage, effectiveness, and side effects of any medication she takes; (5) treatment, other than medication; and (6) any other factors. 20 C.F.R. § 404.1529(c)(3). Once medical evidence of an impairment has been proven, the ALJ "'may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.'" *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)

(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).  However, "[s]ymptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b).  *See also* Social Security Ruling 96-7.

Here, the ALJ found that Hurt's subjective complaints of pain were not supported by the medical evidence.  *Id.* at 23.  Dr. Lorber, Dr. Hutson, and Dr. Renkens found no medical basis for complaints of right hip pain.  *Id.*  The ALJ also noted that the record medical evidence documents only mild degenerative changes at L4-5 and L5-S1 of the lumbar spine and no right hip impairment except for suspected trochanteric bursitis.  *Id.* at 24.  His analysis, however, did not stop with the medical evidence.  The ALJ considered Hurt's daily activities, the number of prescription drugs she takes, the limited side effects of those drugs, and her work history.  *Id.* at 13, 24, 314-315, 648, 653.  In particular, the ALJ noted Hurt's seasonal employment at Red Gold, including work after the alleged onset of disability.  *Id.* at 13, 24.  All of the circumstances support the ALJ's evaluation and treatment of Hurt's symptoms and subjective complaints of pain.  Therefore, the Court concludes that the ALJ properly credited Hurt's subjective complaints of pain.

## IV. **CONCLUSION**

The Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ provided a step- by-step analysis of his consideration both of the objective medical evidence and of Hurt's subjective symptoms so that this Court could "trace the path of his reasoning." *Diaz*, 55 F.3d at 307. He considered all relevant evidence and fully expressed his reasoning for rejecting Dr. Spangler's and Dr. Mines's opinions. For all of the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**. Final judgment shall be entered accordingly.

IT IS SO ORDERED: 02/12/2009

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Electronically distributed to:**

Thomas E. Hamer
tom@tomhamerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov